# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 23-CR-20191-MSN |
| ) | |
| **JUSTIN SMITH,** ) | |
| ) | |
| **Defendant.** ) | |

## SENTENCING MEMORANDUM BY THE UNITED STATES
## FOR DEFENDANT JUSTIN SMITH

The United States of America, by counsel, respectfully submits this memorandum in support of sentencing for defendant Justin Smith. Sentencing for defendant Smith is currently scheduled for June 16, 2025. The United States anticipates submitting victim impact statements from the family of Tyre Nichols and does not otherwise plan to present witness testimony.

The United States concurs with the calculation of the Sentencing Guidelines range as set forth in the Presentence Investigation Report. The total offense level of 32 provides for a guideline imprisonment range of 121 to 151 months. Since defendant Justin Smith committed the offense of obstruction of justice in a case involving a fatal, in-custody assault by law enforcement officers, the United States respectfully submits that a sentence of no less than 151 months is necessary under the factors enumerated in 18 U.S.C. § 3553.

I. **Background**

On October 3, 2024, a federal jury found defendant Justin Smith guilty as to Count Four of the Indictment. Count Four charged, in relevant part, that:

> On or about January 7, 2023, defendants Emmitt Martin III, Tadarrius Bean, Demetrius Haley, Desmond Mills Jr., and Justin Smith, while aiding and abetting one another, knowingly engaged in misleading conduct towards, corruptly persuaded, and attempted to corruptly persuade, their supervisor, Lt. DeWayne Smith, and MPD Detective Valandria McKinnie with the intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of truthful information relating to the commission and possible commission of a Federal offense. Specifically, defendants provided false and misleading information and withheld and intentionally omitted material information in their communications with Lt. Smith and Det. McKinnie, each of whom was tasked with writing MPD reports for the arrest of Tyre Nichols, including: defendants omitted that defendants Martin and Haley kicked Nichols; defendants omitted that Nichols had been struck in the head; defendants falsely stated to Det. McKinnie that Nichols was actively resisting at the arrest scene; and defendants falsely stated to Det. McKinnie that Nichols grabbed defendant Smith by his vest and pulled on officers' duty belts. All in violation of 18 U.S.C. § 1512(b)(3).

Evidence presented at trial showed that both Lt. Smith and Det. McKinnie, pursuant to their duties as detectives with the Memphis Police Department (MPD), submitted reports on the arrest of Tyre Nichols by defendant Smith and other members of Scorpion Team 1. Neither Lt. Smith nor Det. McKinnie were present for the arrest; as a result, they relied on information from defendant Smith and the other Scorpion Team 1 officers who arrested Nichols. Based on information provided by Smith and the Scorpion Team officers, Det. McKinnie prepared the forms necessary to charge *Nichols* with assault.

After defendant Smith and his fellow Scorpion Team officers provided false and misleading accounts, both Lt. Smith and Det. McKinnie submitted reports that omitted any reference to the punches and kicks officers delivered during their assault of Tyre Nichols. But for

2

the unexpected existence of SkyCop camera footage and the subsequent guilty pleas by two Scorpion Team officers, defendant Smith might well have successfully covered up his team's use of unlawful force on Tyre Nichols.

The beating that defendant Smith tried to cover up was a horrific one that ultimately cost a young man his life. While Officer Smith restrained Tyre Nichols, multiple officers viciously assaulted him. Smith and Officer Bean struck Nichols in the head. Officer Mills deployed pepper spray, blinding Nichols. Nichols begged for his mother. Smith continued to restrain Nichols. Mills pledged to "baton the fuck out" of Nichols. Smith told Mills to "hit" Nichols. Mills repeatedly struck Nichols in the arm with his baton. While Smith restrained Nichols, an officer encouraged Officer Martin to hit Nichols; Martin then repeatedly and savagely struck Nichols with "straight haymakers." Officers Martin and Haley then finished the gruesome assault by kicking Nichols. Officers on scene recognized that with their multiples uses of force they were "about to kill" Nichols.

While Nichols lay suffering on the ground, battered and bloodied after the assault, Smith and his fellow Scorpion Team officers bragged about beating Nichols, with Smith laughingly describing the punches he had delivered while officers "rocked" Nichols. When Nichols' condition deteriorated on-scene, Smith and the Scorpion Team began covering up their roles in Nichols' injuries. They falsely claimed Nichols was on drugs, thereby misleading the emergency medical personnel who had responded to the scene. Smith and other Scorpion Team officers on the scene provided false and misleading information to their MPD supervisor, Lt. Smith, and to the other law enforcement officers who responded to the scene.

As the leader of the Scorpion Team, Smith was part of a brazen cover-up that sought at all costs – even the life of a man in his custody – to spare Smith and his officers from any

responsibility for Nichols' gruesome injuries. This cover-up might well have succeeded had the Scorpion Team's vicious beating of Tyre Nichols not been captured on a SkyCop camera that MPD had installed to catch criminal conduct on the city's streets.

Back at the police station, then-Officer Smith had a chance to collect his thoughts, talk to Lt. Smith and to Det. McKinnie, and write a Response to Resistance Report. Rather than adhere to his oath as a police officer dedicated to serve and protect the residents of Memphis, then-Officer Smith chose instead to commit a crime. Rather than admit that he had been involved in the Scorpion Team's use of excessive force, Smith made every effort to cover up the team's liability for injuries that would ultimately kill Tyre Nichols. In his conversations with Lt. Smith and Det. McKinnie at the station, Smith omitted that Martin had punched Nichols; omitted that Martin and Haley kicked Nichols; omitted that Nichols had been struck in the head; and falsely claimed that Nichols was actively resisting at the arrest scene. He joined in false claims that: Nichols had lifted defendants Mills and Smith in the air, grabbed Smith by his vest, and pulled on officers' duty belts.

Team leader Smith continued the cover-up when he authored his Response to Resistance Report. Again, he failed to mention the use of excessive force he knew had occurred during the arrest of Tyre Nichols. He falsely claimed that Nichols was "actively resisting." Smith falsely described his use of force on Nichols as a "soft hands technique with a closed hand" – a nonsensical description of a nonexistent "technique" and one that Bean adopted verbatim in his own report. For his summary of the force officers used on Nichols, Smith reported only that Nichols was "place[d] into custody," a stunning euphemism and an inaccurate account as Smith knew that Nichols had been savagely beaten by multiple officers.

The evidence at trial established that Smith, Bean, Haley, Mills, and Martin engaged in nearly identical conduct when it came to the cover-up. Each officer omitted: that Martin had

punched Nichols; that Martin and Haley kicked Nichols; and that Nichols had been struck in the head. Each officer also falsely exaggerated Mr. Nichols' resistance during his arrest.

Multiple witnesses, including men who trained Smith at the MPD Academy, testified that MPD policy required Smith to report to his supervisor any misconduct by another officer, including the use of excessive force. Smith failed to comply both with that policy and with his training when he participated in conversations with Lt. Smith. With his failure to comply with MPD policy by withholding information from his supervisor and otherwise engaging in misleading conduct, Smith aided and abetted his co-defendants in obstructing justice by covering up their use of unlawful force.

## II. The Factors Enumerated in 18 U.S.C. § 3553 Show that a Significant Term of Incarceration is Necessary for Defendant Smith

Detective Justin Smith of the Memphis Police Department had many, many chances to do the right thing, to accept responsibility for his own actions and hold his team accountable for their own criminal conduct. At every turn, however, defendant Smith chose to violate, rather than uphold, the law. Defendant Smith was willing to lie to save himself and spare his fellow officers, even when it meant a man in his custody would suffer and even when it meant that Tyre Nichols would die. Defendant Smith should be held accountable for his choices.

The nature and circumstances of the offense are deeply troubling, and the offense conduct in this case is extraordinarily serious. While on duty as a police officer, the defendant was involved with other officers in the beating death of a man in their custody. Instead of protecting the citizens in his community from criminals, he committed a crime. Smith lied over and over again in an effort to evade accountability for a death-resulting use of excessive force. Given the choice between upholding the law and violating it, then-Officer Smith chose both to commit a crime and

to help his fellow officers cover up their criminal conduct. The defendant's position as a law enforcement officer means there is a significant need for a lengthy term of incarceration to promote respect for the law. The recommended sentence will make clear that everyone, including law enforcement officials, must follow and respect the law. Given the defendant's repeated lies and wrongdoing in connection with this case, the recommended sentence is necessary to reflect the seriousness of his offense and to provide just punishment.

The defendant's law enforcement experience weighs strongly in favor of imposing the recommended sentence because his "status as a law enforcement officer is . . . more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position." *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000); *see also United States v. Clay*, No. 2:21-MJ-00069, 2021 WL 1553822, at *4 (S.D.W. Va. Apr. 19, 2021) ("Much like a defendant who is alleged to have committed a crime while under court supervision, a defendant who is alleged to have committed a crime while entrusted with the responsibility and power of law enforcement has abused trust and demonstrated disdain for the laws he was charged with enforcing."). The defendant's role as a law enforcement officer meant that he should have understood the wrongfulness of this criminal conduct; in addition, it makes his decision to use his authority as an officer to commit and cover up a violent assault an especially brazen act of disregard for the law.

The need for "general deterrence is especially compelling in the context of officials abusing their power." *United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished). That is because official misconduct and obstruction "may easily go undetected and unpunished," so in the rare instance that it is ferreted out, the interest in general deterrence requires that a strong message be sent to would-be violators. *United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir.

6

2013); *see also United States v. George*, No. 19-4841, 2021 WL 5505404, at *6 (4th Cir. Nov. 24, 2021) (finding police officer's sentence substantively unreasonable where court failed to give more than "a cursory consideration of the need to deter public officials from violating individual rights") (internal alterations). The recommended sentence will deter other police officers who would abuse their position of authority to use unnecessary force against people in their custody. Moreover, since cover-ups among law enforcement officials are especially difficult to detect and deter, there is a special need for the defendant's sentence to deter other officers from making the illegal decision to write false reports to cover up civil rights offenses.

Finally, the proposed guidelines sentence would avoid unwarranted sentencing disparities, not only with defendant Smith's co-defendants, but also with other similarly situated defendants in other cases. Defendant Smith's co-defendants are facing guidelines sentences of up to life in prison for committing offenses the investigation and prosecution of which defendant Smith personally and repeatedly obstructed. In addition, Smith's obstruction offense is a profoundly serious one. Federal courts have imposed significant sentences for law enforcement officers who obstruct similarly serious offenses. *See, e.g.*, *United States v. Lester*, Memorandum Opinion, No. 5:23-CR-00188-4, 2025 WL 1411132 (S.D. W.Va. May 15, 2025) (imposing 210-month sentence for officer convicted of obstruction offenses in death-resulting criminal civil rights case).

### III.   CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court, considering the sentencing factors set out in 18 U.S.C. § 3553(a), impose the recommended sentence of 151 months in prison.

Respectfully submitted,

JOSEPH C. MURPHY

        INTERIM UNITED STATES ATTORNEY

        DAVID PRITCHARD
        Assistant United States Attorney
        167 N. Main, Suite 800
        Memphis, TN 38103

        HARMEET K. DHILLON
        Assistant Attorney General
        Civil Rights Division
        U.S. Department of Justice

By:   /s/ Forrest Christian
        FORREST CHRISTIAN
        Deputy Chief
        KATHRYN E. GILBERT
        Special Litigation Counsel
        ANDREW MANNS
        Trial Attorney
        950 Pennsylvania Ave., NW
        Washington, DC 20530
        (202) 616-2430

CERTIFICATE OF SERVICE

    I, Forrest Christian, hereby certify that a copy of the foregoing Sentencing Memorandum of the United States for Defendant Justin Smith has been filed via the District Court's electronic case filing system.

    This ninth day of June, 2025.

/s/ Forrest Christian
Forrest Christian
Deputy Chief